CALHOUN, administrator, et al. v. RYALS.

1. Where an owner of a large and irregularly shaped tract of land caused it to be subdivided into several separate tracts and the lines of each to be surveyed and marked out by the surveyor, after which such owner executed a voluntary deed purporting to convey one of the tracts to one of his children, which deed described the property by giving definite boundaries on the east, south and west and giving as the north bound-

ary "lands of" the grantor, the descriptive averments in the deed are sufficient, and the description may be applied by extraneous evidence showing that the grantor had caused the north line to be actually surveyed and marked out prior to the making of the deed.

2. As a new trial will result which will cause a setting aside of the verdict, it becomes unnecessary to deal with the assignments of error upon the sufficiency of the decree.

No. 3852. OCTOBER 3, 1924.

Equitable petition. Before Judge Highsmith. Montgomery superior court. June 9, 1923.

J. E. Mobley died intestate in 1910, leaving as his only heirs at law five children and the children of John (a deceased child). After the death of J. E. Mobley one of the five children (Mrs. McArthur) died intestate, leaving a husband and four children. After the death of Mrs. McArthur, Mrs. Emma L. Ryals, one of the surviving children of J. E. Mobley brought suit to the May term, 1920, as heir at law, against all of the persons above mentioned; and also against Mrs. Mary Etta Mobley as trustee for Robert Mobley, the child of R. H. Mobley, the living brother of petitioner. The petition alleged all that is stated above, and substantially as follows: There is no administrator of the estate of J. E. Mobley, and no debts to be paid. Prior to his death J. E. Mobley gave to the children of John Mobley, deceased, certain properties as advancements, which were accepted as their full distributive shares in his estate; and therefore they are not interested in the subject-matter of the suit. J. E. Mobley died seized and possessed of a tract of land in Montgomery County, described (par. 9) as bounded "on the north by lands of A. M. Moses, Lambert Creek, lands of W. T. McArthur, lands of Charlotte Mobley, J. H. Mobley, and Mrs. Mary Johnson; on the east by lands of Mrs. Mary Johnson, J. A. Hall, and I. Q. Coleman; on the south by the Altamaha River and Oconee River; and on the west by the Oconee River, Altamaha River, lands of Moses and Lambert's Creek, containing twenty-eight hundred and sixty (2860) acres of land, more or less, that the same is in a very irregular shape." As heirs at law and heirs of heirs of J. E. Mobley, petitioner and defendants other than the children of John Mobley and the wife and child of Robert H. Mobley (a son of J. E. Mobley) now own the land as tenants in common, the interest of petitioner being an undivided one-fifth portion. Two of the children of J. E. Mobley, namely, R. H. Mobley and Mrs. Abbie Calhoun, have received

certain rents and profits and other sums from the sale of timber on the land. On February 15, 1912, R. H. Mobley executed a deed to his wife, Mrs. Etta Mobley, as trustee for their son Robert, purporting to convey a certain interest in a described part of the land. The deed purports to be a deed of gift, and is void because, first, the description of the land is insufficient; and second, R. H. Mobley did not have the right to convey petitioner's undivided interest in the land. The descriptive clause in the deed is: "All that tract or parcel of land lying and being in the 275 district G. M. of Montgomery County, Georgia, containing three hundred acres, more or less. Beginning at the Ga. & Fla. Railway where the old Darien or River Road crossed, and following the Darien or River Road west until where the old Lumber City Road turns off, and then follow the old Lumber City Road to Bell's Ferry on the Oconee River. To include the dwelling and barns and shelter of the late J. E. Mobley. Bounded north by lands of Moses and Charlotte Mobley, east by the Ga. & Fla. Railway, south by lands of R. H. Mobley, west by the Oconee River and Lambert's Creek and the lands of Moses." The defendants are denying that plaintiff has any interest in the land or any right to share in the rents, issues, and profits arising therefrom. The land is capable of subdivision, and should be partitioned. R. H. Mobley and Mrs. Calhoun should account to petitioner for her share of the profits derived from the land. The prayers are: (a) That plaintiff be decreed to be the owner of a one-fifth interest in the land so held in common; (b) that the deed from R. H. Mobley to his wife as trustee for their child Robert be cancelled as a cloud upon title; (c) that R. H. Mobley and Mrs. Calhoun be required to account for rents and profits; (d) that process issue, and that plaintiffs have general relief.

The defendants, R. H. Mobley and his wife and child and Mrs. Calhoun, filed a joint answer. They admitted that the children of John Mobley did not have any interest in the land, but alleged that the wife and child of R. H. Mobley did have an interest in it. They denied that the plaintiff had any interest, that R. H. Mobley and Mrs. Calhoun had jointly used the land, or that they had received the alleged amount of rents and profits. The answer set up the following: "J. E. Mobley, sometime prior to January 15th, 1910, owned a body of land including the tract of land

described in par. 9 of the petition in this case, and had the same surveyed and cut up into five separate and distinct tracts. On said date by his deed he conveyed to this defendant, R. H. Mobley, one of said tracts, to wit: All of that certain tract or parcel of land lying and being in the 275th district G. M. of Montgomery County, State of Georgia, containing thirteen hundred acres of land, more or less, bounded on the north by the lands of J. E. Mobley, on the east by the Georgia and Florida Railroad, on the south by the Altamaha and Oconee Rivers, and on the west by the Oconee River and lands of Moses and Lambert's Creek, including the residence of the said J. E. Mobley. At the same time that he executed and delivered such deed to the defendant, R. H. Mobley, said J. E. Mobley delivered to said R. H. Mobley the plat which he had made of the land embraced in his said deed. On the same date said J. E. Mobley executed and delivered to the defendant, Abbie R. Calhoun, a deed to another tract of land, to wit: All that certain tract or parcel of land situate, lying, and being in the 275 district G. M. of Montgomery County, State aforesaid, and containing one thousand twenty-seven (1027) acres, more or less, and bounded as follows: north by lands of J. E. Mobley and Mrs. Mary Johnson, east by Mrs. Mary Johnson, J. A. Hall, and I. Q. Coleman, south by the Altamaha River, west by the right of way of the Georgia and Florida Railroad, reserving to himself a life-estate therein. When he delivered to said Abbie R. Calhoun said deed he likewise delivered to her the plat which he had made of said tract of land so conveyed to her. In both of said deeds to those defendants said J. E. Mobley gives as the northern boundaries of the two tracts therein conveyed his own lands; but these defendants show at the date of the execution of said deeds said grantor had had surveyed and divided the body of land embracing the tract of land described in par. 9 of the petition in said case, into five separate and distinct tracts with well-marked and defined boundaries. . . So these defendants say that said J. E. Mobley did not die seized and possessed of the tract of land so conveyed to these defendants; and he did not die seized and possessed of the land described in par. 9 of said petition."

An amendment to the answer alleged: "Defendants show that by mistake of the scriveners, B. H. Grace and H. C. Mann, who drafted said deeds (given for valuable consideration therein men-

tioned), there was by oversight omitted from the description of the respective premises in said deeds reference to the plats which were folded into the same as aforesaid, it being the true agreement and intention of the grantor and said respective grantees, R. H. Mobley and Mrs. Abbie Calhoun, that the description in each deed should contain the following additional words, to wit: 'according to plat of said premises, accompanying this deed.' Defendants further show that of the five parcels into which J. E. Mobley had so divided his land, two of them were on the same day aforesaid conveyed by him to his grandchildren as follows, 147 acres to Charlotte Mobley, and 130 acres to J. Hinton Mobley [children of John Mobley deceased], which two parcels constituted the extreme northwestern portion of the original Mobley tract, the southern boundary of which two parcels was a continuous straight line running approximately east and west. The southern boundary of the Charlotte Mobley parcel constituted the northern boundary of the parcel conveyed R. H. Mobley, as alleged in paragraph eighteen of the original answer, and the southern boundary of the J. Hinton Mobley parcel constituted the northern boundary of the parcel conveyed to Mrs. Abbie Calhoun, as alleged in said paragraph. These parcels conveyed by J. E. Mobley to Charlotte Mobley and J. Hinton Mobley were the identical property referred to in paragraph eight of plaintiff's petition as having been accepted by them, the said John and Charlotte, as their full distributive share in the estate of J. E. Mobley. It was the intention of the parties to describe said boundary line as the northern boundary of the parcels so conveyed to the said R. H. Mobley and Mrs. Abbie Calhoun, and to describe the northern boundary of the R. H. Mobley parcel as the 'lands of J. E. Mobley this day conveyed to Charlotte Mobley,' and to describe the northern boundary of Mrs. Abbie Calhoun's parcel as the 'lands of J. E. Mobley this day conveyed to John Hinton Mobley;' but by mistake of the scrivener aforesaid, and by oversight on his part, the words, 'this day conveyed to Charlotte Mobley' and 'this day conveyed to John Hinton Mobley,' were omitted, it being the true agreement and intention of the grantor and said respective grantees that such description should be embraced in said deeds. A copy of said conveyance to R. H. Mobley is hereto attached marked 'Exhibit A' and made a part hereof, and a copy of the conveyance to Mrs.

Abbie R. Calhoun is hereto attached marked 'Exhibit B' and made a part hereof. Wherefore these defendants pray that Mrs. Abbie Calhoun as administratrix of the estate of J. E. Mobley, deceased, be made a party to this cause, and that said deeds be respectively reformed by inserting therein the additional description omitted as aforesaid."

The jury returned a special verdict in answer to questions propounded to them by the court, as follows: "1. Do you or not find in favor of reformation as prayed for by defendants of the deed of J. E. to R. H. Mobley? Answer: We do not. 2. Do you or not find in favor of reformation as prayed for by defendants of the deed from J. E. to Abbie Mobley (now Calhoun)? Answer: We do not. 3. Do you or not find the defendant R. H. Mobley or his administrator entitled to set off the value of permanent improvements? Answer: Yes. 4. If so, what do you find to be the present value of permanent improvements placed by R. H. Mobley or his administrator on the R. H. Mobley tract? Answer: $3000.00. 5. What do you find to be the present value of the R. H. Mobley land without improvements? Answer: $12,000.00. 6. Do you find plaintiff entitled to recover for rents and profits on the R. H. Mobley tract, not including what you find to be included in the residence portion of J. E. Mobley residence referred to in the deed? If so, in what amount? Answer: Yes $4000.00 timber. 7. What amount of taxes, if any, do you find to have been paid by R. H. Mobley or his administrator on the R. H. Mobley tract? Answer: $1826.01."

Answers to questions as to Abbie Calhoun: To question No. 3, Yes. To No. 4, $3500.00. To No. 5, $10,000.00. To No. 6, Yes, in $5000.00. To No. 7, $1498.68. "8. Do you or not find that the clause in the deed from J. E. to R. H. Mobley, as follows: 'including the residence of said J. E. Mobley,' includes more than the residence and the immediately adjacent inclosures? Answer: We do. 9. If so, state what you find to be included in said description. Answer: All cleared land back of house on Jan. the 15th, 1910. 10. Do you or not find the deeds to John Hinson. Mobley and Charlotte Mobley to be an advancement. Answer: We do."

Upon the verdict it was "decreed by the court, that the plaintiff Mrs. Emma Ryals have and recover of the defendants an

undivided fifth of the said lands described in said petition, except all that portion of said land known and distinguished as the immediate premises including the residence of the said J. E. Mobley, deceased, [as it] stood on January 15th, 1910, and the adjacent inclosures and all cleared land and fields back of said residence on Jan. 15th, 1910, which said excepted portion is adjudged to be the property of the said estate of said R. H. Mobley, deceased, and of W. P. Calhoun as administrator of said R. H. Mobley. Further, it appearing that the amount of taxes paid on said land and value of improvements placed on said land by said W. P. Calhoun, administrator, and his intestate, R. H. Mobley, exceeded the rents and profits received by said W. P. Calhoun, administrator, and his said intestate, to the amount of $826.01, it is further adjudged and decreed that said W. P. Calhoun, administrator, is entitled to have and recover of the plaintiff, Mrs. Emma Ryals, one fifth of said excess, to wit: $165.21, which is hereby made a charge upon the undivided fifth of said land decreed to said Mrs. Emma Ryals."

Exceptions pendente lite were taken to the decree, on the grounds: "I. Said decree fails to follow said verdict, in that it was therein decreed 'that the plaintiff, Mrs. Emma Ryals, have and recover of the defendants an undivided one fifth of the said lands described in said petition, except all that portion of said land known and distinguished as the immediate premises including the residence of the said J. E. Mobley, deceased, stood on January 15, 1910, and the adjacent inclosures and all cleared land and fields back of said residence on Jan. 15, 1910, which said excepted portion is adjudged to be the property of the said estate of said R. H. Mobley, deceased, and of W. P. Calhoun, as administrator of said R. H. Mobley.' The following questions were propounded to the jury: 8th question. 'Do you or not find that the clause in the deed from J. E. Mobley to R. H. Mobley, as follows, "including the residence of said J. E. Mobley," includes more than the residence and immediately adjacent inclosures?' Answer by jury: 'We do.' 9th question. 'If so, state what you find to be included in said description?' .Answer by jury: 'All cleared land back of house [that is to say north of house] on Jan. the 15th, 1910.' Defendants introduced in evidence a deed from J. E. Mobley, father of plaintiff, conveying 1286 acres of land, which deed specifically

included the J. E. Mobley residence, situated in the northern part of said tract, but which deed the court held void as a conveyance of title, for want of description of the northern boundary; but by verdict of the jury said northern boundary was accurately fixed and determined, whereby said deed should have been decreed to be valid without reformation, and that plaintiff have no interest in the lands thereby conveyed. II. Defendants further except to said decree because it failed to follow the verdict in this, that it awarded to plaintiff a one-fifth undivided interest in all the lands described in the petition, except said residence and premises immediately adjacent thereto, and adjacent inclosures back of (that is to say north of) said residence, whereas the jury found as follows: 10th question. 'Do you or not find the deeds to John Hinson Mobley and Charlotte Mobley [grandchildren of J. E. Mobley] to be an advancement?' Answer by jury: 'We do.' Which finding of the jury was adverse to the allegations of the 8th paragraph of plaintiff's petition, to the effect 'that said J. E. Mobley did, prior to his death, give to his said grandchildren, John H. Mobley and Charlotte Mobley, certain property, which was given in advance and accepted by them as their full distributive share of the estate of said J. E. Mobley, and in full settlement with them as heirs at law in his estate, and said grandchildren now have no interest in the property.' And by the finding of said jury, as defendants contend, said grandchildren are entitled to accounting for said advancement, whereby there are six instead of five distributive shares, and plaintiff is entitled to one-sixth instead of one-fifth interest in any portion of J. E. Mobley's estate, not conveyed away by him before his death."

The defendants also filed a motion for a new trial on the general grounds. This was afterwards amended by alleging additional grounds, as follows: "4. Because the court, upon objection by plaintiff that the hereinafter described deeds were void for want of description, ruled out of evidence against the demand of defendants, as a conveyance of title, a deed and plat copied hereto as Exhibits C-1 and C, respectively. Said ruling was error, as defendants contend, (a) because it was contrary to law; and (b) because each of said plats having been folded into its appropriate deed by the grantor or at his direction, and delivered by him with each deed, should have been construed as a part of the description

thereof; and (c) because said deeds together conveyed out of grantor all of his lands south of the lands on the same day conveyed by him to his grandchildren, Charlotte Mobley and John Hinson Mobley, said lands being indicated by plat hereto attached as Exhibit A; and (d) because it was the north line only about which any question of definiteness was raised, and said north lines formed a straight line coinciding with the south line of the lands so conveyed to said grandchildren, and definitely described in grantor's deeds to them; and (e) because said grantor, before the execution and delivery of said rejected deeds, had divided his entire body of land into distinct and separate tracts, two of which were the tracts conveyed by the two said rejected deeds.

"5. Because the court charged the jury as follows: 'Now as to both these deeds (Exhibits B-1 and C-1) except a certain part in the deed to R. H. Mobley, which will presently be brought to your attention, the court has held, and so instructs you, that they are invalid for lack of sufficiently definite and particular description, in that these tracts, these portions of the tract of land sought to be conveyed to R. H. Mobley and Abbie Mobley (Calhoun) each refer to another portion of the tract as one of the boundaries, and the descriptive terms being so many acres more or less, under the rules of construction, being too indefinite to pass title.' Said charge was error, as movants contend, because (a) it was an incorrect statement of the law; and (b) because each of said plats having been folded into its appropriate deed by the grantor or at his direction, and delivered by him with each deed, should have been construed as a part of the description thereof; and (c) because said deeds together conveyed out of grantor all of his lands south of the lands on the same day conveyed by him to his grandchildren, Charlotte Mobley and John Hinson Mobley; and (d) because it was the north line only about which any question of definiteness was raised, and said north line formed a straight line coinciding with the south line of the lands so conveyed to said grandchildren, and definitely described in grantor's deeds to them; and (e) because said grantor, before the execution and delivery of said rejected deeds, had divided his entire body of land into distinct and separate tracts, two of which were the tracts conveyed by the two said rejected deeds.

"6. Because the court charged the jury as follows: 'Now,

gentlemen, if you do not find in favor of reformation of these deeds (Exhibits B-1 and C-1), then plaintiff in the case would necessarily recover as a matter of law, and, based on your finding in this respect, title to her interest would be adjudged in her favor.' Said charge was error, as movants contend, (a) because the evidence demanded a finding in favor of the validity of the deed to R. H. Mobley (Exhibit C-1), the description whereof specifically included the residence of J. E. Mobley, which descriptive expression, so included, the jury found to mean 'all cleared land back of the house [that is to say north of the house] on Jan. the 15th, 1910,' which fixed definitely the northern boundary of this land, this being the only line whose definiteness was controverted, so that no reformation as to same was necessary to its validity; and (b) because the evidence demanded a finding that R. H. Mobley, grantee in said deed, entered possession by virtue thereof and made valuable improvements thereon during the lifetime of the grantor, J. E. Mobley, by reason whereof his rights and those of his personal representative to have said deed reformed were superior to those of a mere volunteer.

"7. Because the court failed to instruct the jury that if the consideration moving the grantor to execute the deeds in controversy (copied hereto as Exhibits B-1 and C-1) was both good and valuable, that is to say, if the consideration was love and affection and also in addition thereto a monetary consideration, the grantees should not be deemed volunteers. Said failure to charge was error, as movants contend, because it omitted a matter necessarily involved in the determination of said cause."

The judge refused to grant a new trial, and the movants excepted. Error was also assigned on the exceptions pendente lite. It was stated in the bill of exceptions that the defendant R. H. Mobley died during pendency of the case, and that the administrator of his estate was made a party; also that an administrator de bonis non on the estate of J. E. Mobley was made a party.

*J. S. Adams, M. B. Calhoun, Lankford & Rogers, Hugh Peterson,* and *J. K. Jordan,* for plaintiffs in error.

*L. C. Underwood, E. D. Graham,* and *J. O. Bomer,* contra.

PER CURIAM. The controlling question in the case arises under the grounds of the motion for a new trial, and is as to the sufficiency

of the two deeds executed by J. E. Mobley, one to his son R. H. Mobley, and the other to his daughter Mrs. Abbie Calhoun. In his rulings on the admissibility of evidence and in his charge to the jury the judge held both deeds in their present form to be void on account of insufficient description of land attempted to be conveyed. The descriptive clauses in each deed were sufficient, and the judge erred in holding the deeds void. The deed to Mrs. Calhoun purported to convey the whole of a "tract of land" containing 1027 acres, more or less, and gave as boundaries of the "tract" certain natural streams and lands of adjoining proprietors, one of whom was the grantor himself. This furnished a key by which the descriptive averments contained in the writing could be applied by extraneous evidence. If the grantor had acquired this tract separately from his other land by grant from some other person, it is plain that a deed of conveyance by him giving descriptive averments as contained in this deed would show his intent to convey that tract, and could be applied to the premises by extraneous evidence. It is equally clear that where the grantor owning a large body of land had, prior to execution of the deed, caused it to be surveyed and divided into separate smaller tracts and marked the boundaries of each on the land, his deed conveying one of them, by descriptive averments as contained in the deed to Mrs. Calhoun mentioned above, could be applied by extraneous evidence as to such facts. There was extraneous evidence of the character mentioned, sufficient to apply the descriptive terms in the deed to the land intended by the grantor to be conveyed. The evidence tended to show that prior to the making of the deed the grantor had caused the entire tract to be surveyed into five separate tracts, and lines of each marked by the surveyor, and that the north line of the tract conveyed to Mrs. Calhoun was the south line of another of the five tracts which on the day the deed was made was conveyed by the grantor to one of his grandchildren. When this is taken into consideration it comports with the statement in the deed to the effect that the land is bounded on the north by lands of the grantor, and makes definite the line of division between the land intended to be conveyed to Mrs. Calhoun and the tract north of that which the grantor did not convey to her. This makes the case entirely different from the case of *Huntress* v. *Portwood,* 116 *Ga.* 351 (42 S. E. 513), and cases following that decision,

in which there was merely an effort to carve out of a larger tract of land a portion thereof, without extraneous proof that the lines had been marked out, or furnishing other data by which the line of division between the land intended to be granted and the other portion of the larger tract could be ascertained. All that is here said is supported by the decision in *Glover* v. *Newsome,* 142 *Ga.* 862 (83 S. E. 939), nor does what is here said conflict with the ruling in *Glover* v. *Newsome,* 132 *Ga.* 797 (65 S. E. 64). The deed held to be insufficient in that case referred to "lot No. 3," but, in addition to that recital in the deed, the decision made special reference to the failure of the deed to show in what town, county, or State the land was situated. If the deed had been definite as to these matters, the decision would no doubt have been different. The papers involved in *McSwain* v. *Ricketson,* 129 *Ga.* 176 (58 S. E. 655), did not refer to a "lot" or "tract" of land, but only to a stated number of "acres, more or less," in a given lot and district.

All that is said above also applies to the contemporaneous deed executed by the same grantor to R. H. Mobley. In this view both deeds were sufficient without reformation, and it becomes unnecessary to deal with the question as to the right of the defendants to reform a voluntary deed. It was erroneous to refuse a new trial.

2. The ruling announced in the second headnote does not require elaboration.

*Judgment reversed. Russell, C. J., dissents. Hines, J., disqualified. The other Justices concur.*

RUSSELL, C. J., dissenting. In June, 1910, Dr. J. E. Mobley, a citizen of Montgomery County, died, leaving five children and two grandchildren of one of his sons who had previously died. On January 15, 1910, Dr. Mobley executed two deeds, one to his son R. H. Mobley, conveying to him "1300 acres of land, more or less, bounded on the north by the land of J. E. Mobley, on the east by the Georgia and Florida Railroad, on the south by the Altamaha and Oconee Rivers, and on the west by Oconee River and lands of Moses and Lambert's Creek, including the residence of said J. E. Mobley." The other deed conveyed to his daughter, Abbie R. Calhoun, "all that certain tract or parcel of land situate, lying, and being in the 275th dist. G. M. of Montgomery County, State aforesaid, containing 1027 acres, more or less, and bounded as

follows: north by lands of J. E. Mobley and Mrs. Mary Johnson; east by Mrs. Mary Johnson, J. A. Hall, I. Q. Coleman; south by Altamaha River, and west by the right of way of the Georgia and Florida Railroad." The grantor reserved to himself a life-estate therein. At the same time he executed deeds conveying to his granddaughter, Charlotte Mobley, a certain tract containing 147 acres, more or less; and to his grandson, J. H. Mobley, a tract containing 130 acres, more or less. Prior to this time the grantor owned and had long been in possession of a tract of land containing 2860 acres, more or less, of irregular shape, from which the tracts above described purported to have been cut; so that, after making the foregoing deeds, he still owned between 200 and 300 acres of land adjoining the foregoing tracts, and with them constituting his plantation as a whole. In 1912 R. H. Mobley made a deed of gift to his son, Robert Mobley, of 300 acres, more or less, of the 1300 acres which had been conveyed to him by J. E. Mobley. A daughter of J. E. Mobley brought this action to avoid the deeds heretofore referred to, and to cancel the deed made by R. H. Mobley to Robert Mobley as a cloud upon the title of the heirs of her father. The case was submitted to a jury, and they returned a verdict in her favor. A motion for a new trial was overruled, and the plaintiffs in error excepted to this ruling, as well as to rulings upon the testimony, to which exceptions were preserved pendente lite.

1. As will appear from the foregoing statement of facts, the decision in this case turns on whether the trial judge properly excluded the two deeds whereby J. E. Mobley conveyed to his son, R. H. Mobley, and to his daughter, Abbie R. Calhoun, the two tracts of land in which the plaintiff, Mrs. Ryals, claimed a one-fifth interest. It was held in *Huntress* v. *Portwood*, 116 *Ga.* 351 (supra), that "Where the owner of an irregularly shaped tract of land embracing approximately 307-½ acres undertakes to convey a portion thereof by executing an instrument in the form of a deed which designates such portion as a parcel of land 'containing' two hundred acres, more or less,' but does not with sufficient definiteness set forth or indicate how it shall be cut off from the entire tract, or otherwise describe such portion so that its identity can be ascertained without resort to extrinsic proof as to the secret and undisclosed intention of the maker with regard thereto, no

title to any part of such tract of land passes to the person named in the instrument as grantee." In the case under consideration, as in that just cited, the difficulty is that J. E. Mobley did not specify any boundary line or lines between the land he intended to convey to his son and that which he intended to reserve. The instrument under consideration states that the land therein described is bounded on the north by J. E. Mobley, just as the purported deed in *Huntress* v. *Portwood,* supra, stated that the tract of land therein referred to was bounded on the west by land of the grantors; as to which this court held that "The words 'on west' certainly can not be said to indicate a boundary line, or enable any one to locate such a line." In the present case the writing (denominated as a deed) from J. E. Mobley to R. H. Mobley described the land as 1300 acres, more or less, and the land sought to be conveyed to Mrs. Abbie R. Calhoun as 1027 acres, more or less. As to this feature of the case the Supreme Court in the *Huntress* case, said: "It would not do to say it was the purpose of Absalom G. Evans and his wife to cut off from the whole tract exactly two hundred acres, or that the portion they intended to convey can be ascertained and separated from the balance of the tract by running a line due north and south. It is obvious that a parcel of land containing about two hundred acres and bounded on the 'north by land of E. I. Anderson; on east by lands of Daniel Evans, colored; [and] on south by land of Addison Ogletree,' might be cut off from the entire tract by running divers straight lines across it. With a given starting-point on either the northern or southern boundary of this tract, it would be practicable to run a line cutting off precisely 200 acres. Without such a starting point, even this could not be done; and given such a starting-point, the line drawn would necessarily vary according to the significance which different persons undertaking to run the line might attach to the words, 'containing two hundred acres, more or less,' appearing in the instrument under discussion. This description as to quantity might easily be understood as referring to a parcel of land embracing any number of acres from 175 to 225. Accordingly, we affirm, without doubt or misgiving, that no surveyor, however expert, could take the description contained in the instrument just mentioned, and, by the aid of any proper extrinsic evidence, locate the precise body of land which the makers of that

instrument intended to convey. Even if they and R. O. Evans had agreed upon a dividing line and understood perfectly how the same should run, this would not suffice; for a deed must itself contain descriptive words with respect to its subject-matter, such as will enable a third person to apply the same to the locus in quo without resorting to any secret and undisclosed intention on the part of the parties thereto. Whilst a deed wanting in this essential is susceptible of reformation, so as to effectuate the unexpressed intention of the parties, it can not, without such reformation, stand as a muniment of title. If Absalom G. Evans and his wife actually agreed with R. O. Evans upon a boundary line cutting off from the entire tract the particular portion thereof they desired he should have, the instrument signed by them should itself have disclosed that such was the fact, and also have contained such a reference to this line as would enable third persons to find and locate it. No authority need be cited in support of the proposition that parol evidence is inadmissible to add to or vary the terms of a deed, or other written instrument. Such evidence is admissible only for the purpose of applying language used in a deed to the subject-matter thereof."

The ruling in that case has been followed in *Luttrell* v. *Whitehead,* 121 *Ga.* 699 (49 S. E. 691), *Crawford* v. *Verner,* 122 *Ga.* 814 (50 S. E. 958), *Glover* v. *Newsome,* 132 *Ga.* 797 (supra), *Edwards* v. *Sands,* 150 *Ga.* 11 (102 S. E. 426), and *Jones* v. *Harris,* 151 *Ga.* 129 (106 S. E. 555). The only description of land in the deeds in the present case is by natural boundaries and the names of adjoining landowners. There are no courses, metes, or bounds, nor any definitely stated starting-points; the names of the adjoining landowners must be relied on as a necessary part of the description. The grantor is alleged to be the adjoining owner on the north; but no data being given by which the dividing lines between the tracts in question and other lands of the grantor can be determined, the description of the tract of land is fatally defective, and for that reason the deeds were void and were properly rejected as evidence.

2. The plaintiffs in error sought to aid the descriptive terms of the deeds by certain plats which were alleged to have been folded into each of the deeds executed by J. E. Mobley, but which were not attached thereto. Nor was any reference made to these plats

in either deed. I think the court properly rejected the plats. A deed to land in this State must be in writing and intrinsically contain the description of the property sought to be conveyed. In some cases a meager description may be aided by extrinsic evidence; but there must be sufficient description to disclose what the intention of the grantor was as to the quantity and location of the land with such certainty as that its identification is practicable. "One essential of a deed is that the description of the premises sought to be thereby conveyed must be sufficiently full and definite to afford means of identification. While it is not necessary that the instrument should embody a minute or perfectly accurate description of the land, yet it must furnish *the key* to the identification of the land intended to be conveyed by the grantor. If the premises are so referred to as to indicate his intention to convey a particular tract of land, extrinsic evidence is admissible to show the precise location and boundaries of such tract. The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." *Crawford* v. *Verner,* supra. The plats alleged to have been placed in a package with the deeds in this case could not properly be used to aid the defective deeds, for the reason that they were not attached to the deeds and the deeds make no reference to any plat. The deeds afford no evidence whatever that they were made with any reference to the alleged plats. Plats, maps, surveys, etc., may be considered when they are attached to a deed, and especially when they are referred to in the deed; but they are not admissible for the purpose of aiding a defective description when there is no reference to a plat in the deed. "In order to make a plat or map a part of a deed there must be a definite and certain reference thereto." 18 C. J. 283, § 251. See also Thrasher *v.* Royster, 187 Ala. 350, 65 So. 796, 797; Wilson *v.* Hoffman, 115 La. 903, 40 So. 328; 13 Cyc. 548, § 7; 8 R. C. L. 1078, § 134; Nelson *v.* Brodhack, 100 Am. D. 328.

3. Upon the trial the plaintiffs in error amended their answer and prayed a reformation of the deeds in question. They except to the failure of the court to charge more fully upon the subject of reformation of deeds. This exception is without merit, because the

judge gave the jury the general rules applicable to the issue involved; and if fuller instructions were desired, they should have been requested. Furthermore, the evidence as to the consideration of the deeds showed that the deeds were deeds of gifts without any valuable consideration; and since a voluntary deed can not be reformed in equity, the verdict returned by the jury on the issue of reformation was demanded. See Civil Code, §§ 4636, 4569; *Turner* v. *Newell,* 129 *Ga.* 89 (58 S. E. 657). In the last-cited case it was held that "As a general rule equity will not, upon petition brought by the grantee in a voluntary deed, reform and correct the same."

4. There was no error in decreeing that the defendant in error was entitled to one fifth of the land. J. E. Mobley had six children, or representatives of six, and therefore his estate must legally be divided into six equal shares; but the evidence upon the part of the plaintiff in the trial, which was uncontradicted, was sufficient to show that Charlotte and John H. Mobley, children of the deceased son, John Mobley, had received in advancements their interest in the land in question.

Under the pleadings and the evidence the jury seems to have reached answers to the questions propounded which were fully authorized; and since the rulings of the trial judge, as well as his instructions to the jury, were a fair and lawful presentation of the law, the result reached in the decree is not subject to exception.